# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **STACI R. RAAB,**<br>Petitioner**,**<br>vs.<br>**NANCY A. BERRYHILL,**<br>Respondent**.** | CASE NO. 18-cv-4041-YGR<br><br>**ORDER GRANTING PETITIONER'S MOTION FOR SUMMARY JUDGMENT AND DENYING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 11, 12 |

Petitioner/Claimant Staci R. Raab filed this action against defendant Nancy Berryhill as Acting Commission of the Social Security Administration ("Commissioner") seeking judicial review of the Commissioner's finding that she was not disabled under section 1614(a) of the Social Security Act ("the Act"). Raab contends the administrative law judge (ALJ): (1) improperly rejected opinions of two doctors: her treating physician and a psychological consultative examiner; (2) improperly found Raab not credible without clear and convincing reasons to do so; (3) disregarded testimony submitted by her mother regarding her limitations; and (4) failed to include all Raab's limitations in hypotheticals to the vocational expert, such that the ALJ's Step Five finding is not supported by substantial evidence.

Having carefully considered the papers submitted and the record in this case, and for reasons set forth below, Raab's motion is **GRANTED**, the Commissioner's motion is **DENIED**, and this action is remanded for the calculation and award of disability benefits consistent with this decision.

## I. BACKGROUND

### A. Procedural History

On July 2, 2014, Raab protectively filed an application for Social Security disability benefits ("SSD"), alleging disability beginning November 27, 2009. (AR 15; 291-93.) Raab attended two hearings because the ALJ at the first hearing left the agency before issuing a

decision. (AR 15 and 124.)

A hearing was held before ALJ Suzanne Krolikowski on May 6, 2016, at which Raab and a vocational expert, Dr. Gerald Belchick, testified. (AR 46.) After Krolikowski left the agency without issuing a decision, ALJ Mary Beth O'Connor conducted a supplemental hearing on January 10, 2017, at which Raab and vocational expert Malcolm J. Brodzinsky testified. (AR 122.) By decision dated April 21, 2017, ALJ O'Connor denied Raab's application. (AR 12-27.)

Raab requested review of that decision, and on May 10, 2018, the Appeals Council denied the request. (AR 1-5.) Raab now seeks judicial review. Raab was last insured for disability insurance benefits on June 30, 2015 and must establish that her disability began on or before that date. (AR 17.)

**B.     Summary of Relevant Evidence in the Underlying Proceedings**

Raab was born in 1979 and was under age 50 at the time of the administrative decision herein. She completed vocational training in cosmetology in 1998, and two years of college in 2006. (AR 65 and 328.) Raab applied for disability benefits based on deep vein thrombosis (DVT) with pulmonary emboli arising from a congenital protein C and S deficiency and MTHFR homozygous mutations, in addition to peripheral vascular disease, anxiety, depression, and obesity. (AR 17-18.)

*1.     Raab's Testimony*

Raab testified that she experienced blood clots in her lungs and in her legs due to DVT, which resulted in trouble breathing, exhaustion, pain, and swelling in her leg. (AR 132.) Because of DVT, she has a stent in her left groin and a filter in her abdomen which cause pain and swelling if she sits upright or stands for long periods of time. (AR 132-33.) If she does not elevate her leg after approximately 30 minutes of sitting, the pain and swelling increase. (AR 133-34.) She can reduce the pain, though not eliminate it, with pain medication (Norco and Tramadol). (AR 134-35.) However, she cannot use the medication when she takes care of her children since it makes her sleepy. (AR 135.) Elevating her leg reduces the pain, but not completely. (AR 136.) She needed to elevate her foot five to six times per day for 30 minutes or more, depending on what else she had been doing. (AR 101.)

Raab testified that she needed help daily with her children because of her depression. (AR 138.) There were days when she was unable to get out of bed and her mother would take care of her children. (AR 138.) She stated that she had had depressive episodes lasting for days when she would not respond to her children's requests. (AR 100.) She had these episodes even though she was on different antidepressant medications at the time. (AR 100.) She testified that she had trouble concentrating and paying attention when she was in pain or on pain medications. (AR 139.) She does not read books because she cannot "remember from one page to the next page." (AR 139.) She further testified that her pain medications decrease her ability to react quickly. Her older son, who has cerebral palsy and a brain disease, frequently loses his balance and, if she is on medication, she is unable to prevent him from falling. (AR 139.)

Raab testified that she had been taking antidepressants that were not prescribed but were given to her by her doctor as samples, since her insurance did not cover them. (AR 51, 83-86.) She also testified that she was prescribed Lorazepam or Xanax for anxiety, which she would only take two or three times per week when she absolutely necessary and when she had full-time help with her young children, because those medications made her feel "knocked out." (AR 80, 84.) She took the anxiety medications to help when she had panic attacks and shortness of breath, which she said occurred about twice a week. (AR 140; *see also* AR 98-99.) She testified that she is "constantly afraid [she's] going to die and [her] kids are going to wake up and be the ones that find her" because her father and had the same medical condition and died in his 30's. (AR 140-41.)

Raab testified that she could not get regular mental health treatment because the doctors to whom she had been referred were not taking on new Medi-Cal patients:

> Q: You have not had a lot of treatment for depression.
> A: No, I have not.
> Q: Why is that?
> A: I can't find resources to have treatment. I have Medi-Cal. I have called therapists. They're either not accepting Medi-Cal or they're not accepting new patients. I tried psychologists. I can't afford a 300-plus dollar or $300 office visit I mean.
> Q: How many times have you sought mental health treatment over the years, trying to get in to see them?

1
2

A: Many times. I mean I tried up until two weeks ago and I've tried and tried and tried. I've gone and the only thing that I was able to do through the county was a group therapy and it was basically like an alcohol or drug addiction therapy.

(AR 131-132; *see also* AR 97.)

### 2. *Vocational Expert's Testimony*

Two different vocational experts testified at the two ALJ hearings. To Dr. Belchick, the first ALJ posed the question of whether a hypothetical person could perform her prior jobs assuming Raab's age, educational level, and work history, and limited to:

> sedentary work as defined in the regulations, except occasional balance, stoop, kneel, crouch, crawl and climb ramps and stairs; no climbing ropes, ladders or scaffolds; no temperature extremes; no exposure to hazards such as heights or moving machinery or to atmospheric conditions such as smoke, fumes, odors, dusts, gases, or poor ventilation beyond [the] level typically found in an indoor work environment . . .

(AR 108-09.) Dr. Belchick responded that Raab could perform her prior office assistant job, but no other prior work. (AR 109.) Adding to the hypothetical the limitation of having to stand occasionally or "five minutes after every 30 minutes of sitting," Dr. Belchick testified that the job would be "less than sedentary." (AR 109-12.) As Dr. Belchick stated, "a sedentary job . . . is not generally performed with the ability to stand on occasion throughout the workday" (AR 110) and the need to get up and down for a few minutes every hour "changes it from a job as its generally performed in the national economy . . . to what's called an accommodated job." (AR 111.) Dr. Belchick further testified that if the hypothetical person had the added limitation of needing to elevate their leg for one hour in a workday, that would eliminate all jobs. (AR 112.)

To the second vocational expert, Brodzinsky, the ALJ O'Connor posed a hypothetical of:

> sedentary work as defined by the DOT; occasionally climb ramps or stairs; never climb ladders, ropes or scaffolds; frequently balance; occasionally stoop, kneel, crouch or crawl; no extreme cold or extreme heat; never unprotected heights or moving mechanical parts; avoid concentrated exposure to dust, odors, fumes and pulmonary irritants; simple, routine tasks and occasional interaction with coworkers and the public.

(AR 152-53.) Brodzinsky testified that this eliminated all of Raab's prior work, but not all work in the national economy. (AR 153.) The colloquy between the ALJ and Brodzinsky was as follows:

> Q: Could the hypothetical individual perform any other work?
>
> A: Yes, Your Honor. Such a hypothetical individual could perform unskilled, sedentary work with little or no interaction with others such as in a document preparer, 249.587-018, unskilled, with an SVP of 2, sedentary physical demands. In the national economy there are in excess of 45,000 such positions. Such a hypothetical individual could be an office addresser, someone who addresses envelopes, 209.587-010, unskilled, with an SVP of 2, sedentary physical demands. There are 15,000-plus positions for this DOT. Do you need any others?
>
> Q: I need a third.
>
> A: A third one, a final assembler of optical goods, it's an inspection job at the unskilled level, 713.687-018, unskilled with an SVP of 2, sedentary physical demands. There are approaching 15,000 positions nationally.

(AR 153.) Raab's counsel asked Brodzinsky about adding to the hypothetical the limitation of needing to elevate one's leg periodically throughout the day, and Brodzinsky stated that this additional limitation would preclude all work. (AR 155.)

### 3. Dr. Campos's Report

On May 14, 2016, Raab's long term treating physician, Aurelio Campos, M.D., completed a medical source statement form addressing Raab's exertional and non-exertional limitations. (AR 1194-1200.) The form provided the Social Security Administration's technical definitions of "sedentary work" and "light work." (AR 1194-95.) Dr. Campos indicated that Raab was not capable of performing sustained sedentary or light work on a regular and continuing basis, even if she alternated sitting and standing during the workday. (AR 1194-1195.) Addressing specific limitations, Dr. Campos indicated that Raab could sit for one hour at a time but could not stand or walk for one hour at a time, and that she must lie down for one hour during an eight-hour workday. (AR 1196.) As to non-exertional limitations resulting from "pain, fatigue and/or other subjective symptoms, which reasonably are the result of medically determinable impairments, or the treatments for the impairments," Dr. Campos marked "moderately severe" or "severe" as to:

> 1. The ability to maintain attention and concentration for extended periods (the approximately 2-hour segments between arrival and first break, lunch, second break, and departure).
> 2. The ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances.
> 3. The ability to complete a normal workday and workweek without interruptions from medically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.

5

(AR 1199.) Dr. Campos further agreed with the statement that Ms. Raab's "impairments are likely to produce 'good days' and 'bad days,'" and she likely would miss more than four days of work per month on average as a result of impairments or treatment. (AR 1200.)

### 4. *Dr. Renfro's Evaluation*

Raab underwent a comprehensive mental status evaluation at the request of the Agency by Terralyn Renfro, Psy.D., on October 2, 2014. (AR 675-80.) Dr. Renfro diagnosed Raab has having "unspecified depressive disorder." (AR 679.) Dr. Renfro found, among other things, that Raab was:

- moderately impaired in her "ability to relate and interact with co-workers and the public . . . [due to] irritability and overwhelm"
- mildly to moderately impaired in her "ability to maintain persistence and pace"

(AR 679.) Dr. Renfro opined that "from a psychological standpoint, [Raab] is expected to remain stable over the next twelve months with active treatment. However, given the correlation between her medical condition and her depressive symptoms, it is not likely that her symptoms will be completely remedied within a year." (AR 679.)

## II. LEGAL FRAMEWORK

This Court has jurisdiction under 42 U.S.C. section 405(g). The Court may reverse the ALJ's decision only if it "contains legal error or is not supported by substantial evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (quoting *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)). It is "more than a mere scintilla but less than a preponderance." *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (quoting *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). Where the evidence is susceptible to more than one rational conclusion, the Court must uphold the ALJ's decision. *Burch*, 400 F.3d at 679. The Court must "consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue,* 504 F.3d

1028, 1035 (9th Cir. 2007)). The Court must rely "only on the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which [s]he did not rely." *Id.* at 1010; *accord Treviso v. Berryhill,* 871 F.3d 664 (9th Cir. 2017).

Under the Social Security Act, individuals who are "under a disability" are eligible to receive benefits. 42 U.S.C. § 423(a)(1)(D). A "disability" is defined as "any medically determinable physical or mental impairment" which prevents one from engaging "in any substantial gainful activity" and is expected to result in death or last "for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Such an impairment must result from one or more "anatomical, physiological, or psychological" conditions "demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423 (d)(3). The Act limits eligibility for benefits to those whose impairments "are of such severity that [they are] not only unable to do [their] previous work, but cannot, considering [their] age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. § 423(d)(2)(A); *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Act uses a five-step sequential framework to determine whether a claimant is disabled. At Step One, the ALJ must determine whether the claimant is engaged in substantially gainful activity. 20 C.F.R. § 404.1520(b). A person is engaged in substantially gainful activity if engaged in work involving significant physical or mental activities. 20 C.F.R. § 404.1572(a). Gainful work activity is defined as "work usually done for pay or profit," regardless of whether the claimant receives a profit. 20 C.F.R. § 404.1572(b). If the claimant is presently engaged in substantially gainful activity, she is not disabled. If the claimant is not engaged in substantially gainful activity, the ALJ proceeds to Step Two.

At Step Two, the ALJ must determine whether the claimant has an impairment or combination of impairments that is severe. 20 C.F.R. §§ 404.1520(c), 416.920(c). A "severe" impairment is defined in the regulations as one that significantly limits an individual's ability to perform basic work activities. If the claimant does not have a severe impairment or combination of impairments, she is not disabled. If the claimant does have a severe impairment or combination

7

of impairments, the ALJ proceeds to Step Three.

At Step Three, the ALJ must determine whether a claimant's impairment or combination of impairments "meets or equals" the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1., 20 C.F.R. §§ 404.1520(d), 416.920(e). If the claimant's impairment or combination of impairments meets the listed criteria and the duration requirement, the claimant is disabled. 20 C.F.R. § 404.1509. If the impairment or combination of impairments does not meet the criteria of a listing or does not meet the duration requirement, the ALJ proceeds to the next step.

At Step Four, the ALJ must determine whether the claimant has the ability to perform past relevant work. 20 C.F.R. § 404.1520(f). Before reaching Step Four in the sequential evaluation, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(e). A claimant's RFC consists of her ability to engage in physical and mental work activity on an ongoing basis, in spite of any limitations from impairments. The ALJ considers both severe and non-severe impairments in determining the claimant's RFC. 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant has the RFC to perform past relevant work, she is not disabled. If the claimant is unable to do past relevant work or has no past relevant work, the ALJ proceeds to the final step in the sequential evaluation.

At Step Five, the ALJ considers the claimant's RFC, age, education, and work experience to determine whether the claimant can perform any other work. 20 C.F.R. §§ 404.1520(f), 416.920(f). Even non-severe impairments must be considered. 20 C.F.R. § 404.1523(c). At Step Five, the burden shifts to the Commissioner to show that, "taking into account a claimant's age, education, and vocational background, she can perform any substantial gainful work in the national economy." *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001) (citing 20 C.F.R. §§ 404.1520(f) and 416.920(f); *Moore v. Apfel*, 216 F.3d 864, 869 (9th Cir.2000)).

In determining whether a successful adjustment to other work can be made, the ALJ must consider the claimant's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. If the claimant can perform all or substantially all of the exertional demands at a given level of

exertion, the medical-vocational rules direct a conclusion of either "disabled" or "not disabled" depending upon the claimant's specific vocational profile (SSR 83-11). When the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has non-exertional limitations, the medical-vocational rules are used as a framework for decisionmaking, unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or nonexertional limitations (SSRs 83-12 and 83-14). If the claimant has solely nonexertional limitations, section 204.00 in the Medical-Vocational Guidelines provides a framework for decisionmaking (SSR 85-15). 20 C.F.R. § § 404.1520(e)

In any action brought by or against the United States, the Equal Access to Justice Act requires that "a court shall award to a prevailing party other than the United States fees and other expenses . . . unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A).

### III. ALJ'S DECISION

In a thirteen-page decision dated April 21 2017, the ALJ applied the five-step sequential analysis to determine that claimant was not eligible for disability insurance benefits. (AR 12-32.) Briefly, the ALJ determined as follows:

#### A. Step One

The ALJ found at Step One of the sequential analysis that Raab had not engaged in substantial gainful activity since the alleged onset date of November 27, 2009 through her date last insured (June 30, 2015). (AR 17-18.) Though Raab had earned small amounts in 2010 and 2012, these were found not to amount to substantial gainful activity. (AR 18.)

#### B. Step Two

At Step Two, the ALJ found Raab had the following severe impairments: peripheral vascular disease; deep vein thrombosis (DVT) episodes with pulmonary emboli, status post mesh placement to prevent further DVT in left lower extremity; history of congenital protein C and S deficiency; and MTHFR homozygous mutations (20 CFR § 404.1520(c)). (AR 18.) The ALJ further found that these impairments caused significant limitations in Raab's ability to perform basic work activities. (AR 18.) While she had type 2 diabetes and was obese, these diagnoses

were not found to cause severe limitations in her ability to perform basic work activities.

The ALJ further determined that Raab's "medically determinable mental impairments of depression and anxiety, considered singly and in combination, did not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and were therefore non-severe." (AR 18.) In making this determination, the ALJ considered "four broad areas of mental functioning set out in the disability regulations for evaluating mental disorders and in the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1)," known as the "Paragraph B" criteria. The four areas of functioning are: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. (AR 19.) These limitations "are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process," which may be factored in to a "more detailed assessment" of mental residual functional capacity at steps 4 and 5. (AR 19.) The ALJ found that Raab had mild limitations in all four areas. (AR 19.) The ALJ's decision on the Paragraph B criteria states that it was based upon unspecified portions of "the treatment record[,] . . . . claimant's interactions at the hearing, mental status examinations, and care for her disabled son," all of which the ALJ found contradicted Raab's statements concerning her mental functioning. (AR 19.)

### C. Step Three

At Step Three, the ALJ found that Raab did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). (AR 19.)

### D. RFC Determination

The ALJ found that Raab "had the residual functional capacity (RFC) to perform sedentary work as defined in 20 CFR 404.1567(a) except with the ability to occasionally climb ramps or stairs; never climb ladders, ropes or scaffolds; frequently balance; occasionally stoop, kneel, crouch or crawl; no extreme cold or extreme heat; never unprotected heights or moving mechanical parts; and avoid concentrated exposure to dust, odors, fumes and pulmonary irritants." (AR 19.) The ALJ noted that she had "considered all symptoms and the extent to which these

symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. . . ." While the ALJ found that Raab's physical or mental impairments reasonably could be expected to produce her symptoms, the ALJ determined that "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (AR 22.) The ALJ stated that she found Raab's testimony "not entirely consistent," for the following reasons:

1. Raab's statement that she was "caring for her sick son but would not get out of bed due to depression" was internally contradictory and not supported by the medical record (AR 22);

2. Raab testified that she could not find any mental health treatment, despite multiple efforts, "which is not consistent" and her medical records did not state that she "requested additional mental health treatment" (AR 22);

3. Raab's statements about her mental functioning—level of depression, need for constant help to care for her children, inability to "remember even one page of a book," bi-weekly panic attacks, and long-standing inability to sleep more than three or four hours a night—were not substantiated in her treatment records or reflected in the medical evidence. The ALJ further found that Raab's purported inability to remember one page in a book was inconsistent with her ability to testify at the hearing.

In addition, the ALJ summarized and weighed a third-party function report from Raab's mother, as well as findings from several doctors including: Raab's treating physician (Dr. Campos); an internal medicine consultative examiner (Dr. Lewis); a psychological consultative examiner (Dr. Renfro); three state agency medical consultants (Drs. Eskander, Heldman, and Beig); a state agency psychological consultant (Dr. Colsky); and responses to medical interrogatories (Dr. Todd). (AR 22-25.)

### E. Step Four

At Step Four of the sequential analysis, the ALJ found that Raab was unable to perform past relevant work. The vocational expert testified that Raab's past relevant work as a conference planner, space scheduler, and sales clerk all exceeded her RFC, and the ALJ agreed. (AR 25-26.)

### F. Step Five

Having reached Step Five, the ALJ determined that Raab was not disabled because, "through the dated last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed." (AR 26.) The ALJ found as follows:

> Through the date last insured, if the claimant had the residual functional capacity to perform the full range of sedentary work, a finding of "not disabled" would be directed by Medical-Vocational Rule 201.28. However, the claimant's ability to perform all or substantially all of the requirements of this level of work was impeded by additional limitations. To determine the extent to which these limitations erode the unskilled sedentary occupational base, through the date last insured, the Administrative Law Judge asked the vocational expert whether jobs existed in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would have been able to perform the requirements of representative occupations such as document preparer (DOT 249.587-018) sedentary and unskilled with an SVP 2, with jobs numbering 45,000 in the national economy; office addresser (DOT 209.587-010) sedentary and unskilled with an SVP 2, with jobs numbering 15,000 in the national economy; and final assembler, optical (DOT 713.687-018) sedentary and unskilled with an SVP 2, with jobs numbering 15,000 in the national economy.

(AR 26-27.)

## IV. DISCUSSION

In her motion for summary judgment, Raab argues the ALJ erred by: (1) improperly rejecting the opinions of her treating physician, Dr. Campos, and a psychological consultative examiner, Dr. Renfro; (2) improperly finding her testimony about the severity and extent of her symptoms and limitations not credible without clear and convincing reasons to do so; and (3) failing to include all limitations in the hypotheticals posed to the vocational expert. Based on these errors, Raab contends that the ALJ's Step Five finding is not supported by substantial evidence. The Court considers each argument in turn.[1]

---

[1] Raab also argues that the ALJ did not offer specific "reasons germane" to rejecting a "Function Report-Adult-Third Party" submitted by her mother, which stated that Raab "cannot stand, sit or be in any one position for any length of time due to her condition," and suffered from anxiety, limited ability to concentrate, and difficulty completing tasks. (AR 375-76.) Because the Court finds that the other bases stated for reversing the Commissioner's decision are more than sufficient, it does not reach this argument.

### A. Opinions of Doctors Campos and Renfro

Raab first contends that the ALJ's rejection of the opinions of her treating physician and the psychological consultative examiner was contrary to the applicable legal standards and the substantial evidence. An ALJ evaluates medical opinions together with other relevant evidence when considering a disability claim. 20 C.F.R. § 404.1527(b). In deciding how much weight to give each medical opinion, the ALJ considers factors including the treating or examining relationship between the opinion's source and the claimant; how well the opinion is supported; and how consistent it is with the record as a whole. *See* 20 C.F.R. § 404.1527(c).

"As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995), *as amended* (Apr. 9, 1996) (citing *Winans v. Bowen,* 853 F.2d 643, 647 (9th Cir.1987)). "[W]here the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons." *Id.; see also Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) ("To reject an uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence"). Likewise, a treating doctor's ultimate conclusions can only be rejected for "clear and convincing" reasons. *Lester*, 81 F.3d at 830 (internal citation omitted). "[I]f the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence." *Id.* (internal citation omitted). "[W]hen evaluating conflicting medical opinions, an ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings. *Bayliss*, 427 F.3d at 1216. However, "an ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than [...] criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Garrison v. Colvin*, 759 F.3d 995, 1012-1013 (9th Cir. 2014).

Raab contends that the ALJ rejected certain opinions of Drs. Campos and Renfro without sufficient reasons. The Commissioner argues that the opinions Raab relies upon were contradicted by other evidence in the record, such that the ALJ only needed to provide specific and legitimate reasons for discounting them. However, Raab argues that the ALJ's basis for discounting the

opinions met neither the clear and convincing reasons standard nor the "specific and legitimate" reasons standard.

The Court agrees that the "specific and legitimate reasons" standard was not met here. The opinions at issue are considered in turn.

*1. Dr. Campos*

The ALJ summarized Dr. Campos' opinions provided on the Medical Source Statement form dated May 4, 2016 (AR 1194-1200 [Exh. 18F]) and then rejected those opinions as follows:

> This is given partial weight as the limits given by Dr. Campos are too extreme. Additional limits beyond the RFC are not supported. It appears that Dr. Campos' opinion is based mainly on the claimant's subjective complaints and is not consistent with the medical evidence. The treatment notes do not contain complaints from claimant as to many of these limitations, Dr. Campos did not advise claimant to limit her activities to this degree, and the treatment provided is not such as would be expected for someone with so many limitations.

(AR 25.) The record includes some 240 additional pages of Dr. Campos's treatment records, spanning a timeframe from November 2004 to May 2016. (*See* AR 454-79, 530-61, 596-662, 663-666, 1111-1200, 1216-42 [Exh 1F, 4F, 6F, 16F, 17F, 21F].) The ALJ's decision does not state how Dr. Campos's opinions differ from "the medical evidence," either in Dr. Campos's own treatment notes or any of the medical records from Raab's numerous emergency room visits or hospital admissions. The ALJ gave greater weight to the opinions of the Agency's internal medicine consultative examiner, Dr. Lewis, who saw Raab once in September 2014 than to her treating doctor. (AR 667-72 [Exh. 7F].) The ALJ's reasons for doing so were no more specific than to say that Dr. Campos's opinions "appeared" to be based "mainly on the claimant's subjective complaints" and that the opinions were contrary to unspecified "medical evidence." At the same time, the ALJ discounted the opinion by stating that the treatment notes *did not include* subjective complaints about most of the stated limitations.

The ALJ's basis for discounting Dr. Campos's opinion is insufficient because it does not offer "specific and legitimate" reasons for rejecting it. The ALJ was required to "se[t] out a detailed and thorough summary of the facts and conflicting clinical evidence," but instead "pointed to nothing in Dr. [Campos's] treatment notes or elsewhere in the clinical record that contradicted" his opinion. *Trevizo v. Berryhill*, 871 F.3d 664, 677 (9th Cir. 2017) (quoting

14

*Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). In giving Dr. Campos's opinion partial weight while giving "great weight" to the opinion of a non-treating examiner, the ALJ erred. *Id.* at 677 (ALJ erred in giving treating physicians' opinion "little weight" rather than finding it controlling as compared to non-examining physician's contrary opinion). Moreover, the ALJ's statement that "the treatment provided is not such as would be expected for someone with so many limitations" specified no basis in the record for so stating. With no specifics to support it, the reasoning appears to be entirely the ALJ's personal opinion.

"The subjective judgments of *treating physicians* are important, and properly play a part in their medical evaluations." *Embrey v. Bowen,* 849 F.2d 418, 421-22 (9th Cir.1988) (emphasis supplied). The subjective judgments of an ALJ as to impairment, on the other hand, have no place in determining whether a claimant is disabled. *Cf. Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1235 (9th Cir. 2011) ("the ALJ's personal observations of Taylor do not constitute substantial evidence for rejecting any of the opinions of Taylor's physicians who have found Taylor psychologically impaired"); *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) ("Sheer disbelief is no substitute for substantial evidence.") The ALJ here substituted her own judgment and improperly discounted the opinion of Raab's treating physician in favor of an examiner who gave Raab marginally fewer restrictions.[2]

   *2.    Dr. Renfro*

The ALJ acknowledged Dr. Renfro's opinions that Raab had some moderate and mild-to-moderate mental limitations, but discounted those opinions as follows:

> This is given partial weight. Dr. Renfro was given only the Form SSA-3368 for review (Exhibit 8F/3). Dr. Renfro did not have the benefit of the updated medical evidence. The undersigned finds that the claimant has no severe mental impairment based on the longitudinal record.

---

[2] The opinion of the consultant (Dr. Lewis) given "great weight" by the ALJ, is quite similar in many respects (carrying/lifting; stooping/kneeling/ crouching; handling/ fingering/ feeling) to that of Dr. Campos. (*Compare* AR 1194-1200 with AR 667-72.) The main differences between them are that Dr. Lewis found Raab had no restrictions on sitting and could stand and walk up to two hours per day, while Dr. Campos found she could only sit for an hour at a time, could not stand or walk for one hour at a time, and needed to lie down during the day. (*Id.*) Moreover, the form Dr. Campos completed covered more categories of limitation than the report produced by Dr. Lewis. (*Id.*)

15

(AR 24.)

Dr. Renfro's was the only opinion provided by a doctor who performed a psychological examination of Raab. The ALJ's statement that Dr. Renfro's October 2, 2014 opinion "did not have the benefit of [unspecified] updated medical evidence" does not provide specific and legitimate reasons for rejecting it, and certainly not in favor of the opinions of non-examining state agency doctors. The ALJ did not identify anything in "the updated medical evidence" that warranted rejecting Dr. Renfro's opinions. An ALJ errs when she discounts the conclusions of an examining doctor without a substantive basis for doing so. *See Nguyen v. Chater*, 100 F.3d 1462, 1464 (9thCir. 1996). "[T]he opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record . . . [and] the opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician." *Lester*, 81 F.3d at 830–31.

The ALJ's decision stated that "the mental limits have been removed from the RFC because the longitudinal record does not support any severe mental impairments." (AR 22.) The ALJ did not have a proper basis for ignoring Dr. Renfro's opinions as to Raab's moderate and mild-to-moderate mental limitations. Moreover, even non-severe impairments must be considered throughout the sequential analysis. 20 C.F.R. § 404.1523(c) ("In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.") Because the ALJ rejected Dr. Renfro's opinions without specific and legitimate reasons for doing so, and therefore failed to consider "the combined effect of all" of Raab's impairments in reaching her conclusion, the ALJ erred.

**B.  Discrediting Raab's Testimony Without Clear and Convincing Reasons**

Raab next contends that the ALJ did not offer clear and convincing reasons to discount her testimony as to the intensity, persistence, and limiting effects of her symptoms. In *Garrison v. Colvin*, 759 F.3d 995 (9th Cir. 2014), the Ninth Circuit reiterated a two-step analysis by which an

16

ALJ must determine if a claimant's subjective pain and symptom testimony is credible. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id*. The claimant is not required to provide objective evidence of pain or of the severity of their symptoms, only that the impairment "reasonably [could] have caused some degree of the symptom." *Id*. at 1014 (citing *Smolen v. Chater,* 80 F.3d 1273, 1282 (9th Cir. 1996)). Once this first step is satisfied, the ALJ can reject the claimant's testimony about the severity of his symptoms and pain only if there is affirmative evidence of malingering or other findings as to credibility based upon clear and convincing reasons. *Id*. at 1014-15 (citing *Smolen,* 80 F.3d at 1281 and *Robbins v. Soc. Sec. Admin.,* 466 F.3d 880, 883 (9th Cir. 2006)). Stated otherwise, "[i]f the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958–59 (9th Cir. 2002) (citing *Bunnell v. Sullivan,* 947 F.2d 341, 345–46 (9th Cir. 1991) (en banc)).

"The clear and convincing standard is the most demanding required in Social Security cases." *Moore v. Comm'r of Soc. Sec. Admin.,* 278 F.3d 920, 924 (9th Cir. 2002). A credibility determination should consider such factors as "reputation for truthfulness, inconsistencies either in testimony or between testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." *Thomas*, 278 F.3d at 959 (*citing Light,* 119 F.3d at 792). When an ALJ finds a claimant's testimony concerning symptoms unreliable, the ALJ must make a credibility determination that "*specifically* identif[ies] what testimony is credible and what testimony undermines the claimant's complaints." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) (emphasis added).

Here, the ALJ agreed that Raab's impairments reasonably could be expected to cause the alleged symptoms, but rejected her testimony as to the severity, persistence, and limiting effects of her symptoms. (AR 22.) The ALJ's decision stated that she found Raab's testimony "not entirely

17

consistent" for the following reasons:

> 1. Raab's statement that she was "caring for herسick son but would not get out of bed due to depression" was internally contradictory and not supported by the medical record (AR 22);
>
> 2. Raab testified that she could not find any mental health treatment, despite multiple efforts, "which is not consistent" and her medical records did not state that she "requested additional mental health treatment" (AR 22);
>
> 3. Raab's statements about her mental functioning—level of depression, need for constant help to care for her children, inability to "remember even one page of a book," bi-weekly panic attacks, and long-standing inability to sleep more than three or four hours a night—were not substantiated in her treatment records or reflected in the medical evidence, and her inability to remember one page in a book was inconsistent with her ability to testify at the hearing.

These statements fail to establish clear and convincing reasons to deem Raab's testimony not credible. The ALJ did not identify what other medical evidence she believed was inconsistent with Raab's statements. The ALJ also took statements out of context, failing to note, for instance, that Raab testified to long periods of depression when she could not get out of bed and her mother or husband would come and take care of her children (AR 138, 139), or that Raab's testimony about insomnia was corroborated by earlier reports of difficulty sleeping and a prescription for sleep medication (AR 555). Further, the ALJ's conclusion that some of Raab's statements were "inconsistent" with the ALJ's own observations or beliefs does not constitute a proper basis for rejecting the evidence. *See Taylor*, 659 F.3d at 1235 (personal observations are not a basis to reject testimony); *Benecke*, 379 F.3d at 594 (ALJ's disbelief, without more, is insufficient to reject testimony). In short, because the ALJ did not have clear and convincing reasons for rejecting Raab's testimony about the effects of her limitations, the ALJ erred.

### C. Failure to Include All Limitations in Vocational Hypotheticals

As stated above, the ALJ failed to provide clear and convincing reasons for finding Raab's symptoms not credible, and therefore should have included these limitations in her determination of Raab's RFC. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). Likewise, the ALJ rejected the opinions of Drs. Campos and Renfro regarding Raab's limitations. Had those limitations been included in the ALJ's RFC determination and the steps flowing therefrom, the ALJ would have determined Raab to be disabled. In *Russell v. Sullivan*, 930 F.2d 1443, 1455 (9th

18

Cir. 1991), the Ninth Circuit held that "[h]ypothetical questions posed to a vocational expert must set out all the limitations and restrictions of the particular claimant, including pain and an inability to engage in certain activities." If the assumptions in the hypotheticals posed to the vocational expert are not supported by the record, the vocational expert's opinion that a claimant is capable of working has no evidentiary value. *Id*.

As in *Lingenfelter*, the vocational expert offered opinions about available jobs in the national economy taking into account the limitations as the ALJ determined them to be in the RFC, and taking into account additional limitations posed by Raab's counsel in the hearing. *Lingenfelter*, 504 F.3d at 1035. Further, as in *Lingenfelter*, the ALJ here failed to provide clear and convincing reasons for excluding the claimant's symptoms testimony in the RFC determination. *Id*. at 1040. Because substantial evidence does not support the RFC, the Step-Five determination likewise fails for lack of substantial evidence. *Id*.

### D. Remedy

Raab requests that this matter be remanded for immediate payment of benefits, and in the alternative seeks further administrative proceedings. Courts in the Ninth Circuit "will not remand for further proceedings where, taking the claimant's testimony as true, the ALJ would clearly be required to award benefits." *Lingenfelter*, 504 F.3d at 1041; *see also Leon v. Berryhill*, 880 F.3d 1041, 1044-45 (9th Cir. 2017), as amended (Jan. 25, 2018) (may credit evidence as "true" and award benefits if: (1) an ALJ failed to provide legally sufficient reasons for rejecting evidence; and (2) there are no outstanding issues on which further proceedings in the administrative court would be useful.). Reversal of the Commissioner's decision for direct payment of benefits is appropriate if: (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Harman v. Apfel*, 211 F.3d 1172, 1178-79 (9th Cir. 2000).

The Court agrees that, when the improperly rejected evidence is credited, Raab cannot work on a regular and continuing basis. Had the ALJ reached an RFC that properly credited the

19

testimony of Raab, Dr. Campos, and Dr. Renfro, the conclusion would be that Raab was unable to perform all work in the national economy and was disabled. (*See* AR 112 [vocational expert testimony that "[t]here's no job that I know of at any of the exertional levels that permits you to elevate your leg."]; AR 115 [estimate absences would be unacceptable work practice]; AR 155 [having to elevate leg even five minutes per hour would preclude all unskilled work]; AR 155-56 [moderately severely impaired as to staying on task, as stated by Dr. Campos, would preclude all work].)

Further, the Court finds no outstanding issues on which further proceedings in the administrative court would be useful, nor has the Commissioner offered any substantial reason for so finding. That every expert's opinion did not align with the others is not enough, on its own, to remand for further hearing. Further, the Commissioner's citations to supposed contradictions in the record mischaracterize the statements therein.

Accordingly, Raab is entitled to disability benefits. 20 C.F.R. § 404.1545(b)-(c).

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Claimant's motion and **DENIES** the Commissioner's motion for summary judgment. The Commissioner's final decision is **ORDERED REMANDED** for the calculation and award of disability benefits consistent with this decision.

This Order terminates Docket Numbers 11 and 12.

The Clerk shall close the file.

**IT IS SO ORDERED.**

Dated: June 18, 2019

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**